### JENKINS v. ARMOUR & CO. et al.
### No. 35750.

Supreme Court of Oklahoma.

Sept. 29, 1953.

Howard K. Berry, Oklahoma City, for plaintiff in error.

Butler, Rinehart & Morrison, Oklahoma City, for defendants in error.

WILLIAMS, Justice.

Parties are referred to herein as they appeared in the court below.

Plaintiff, Morris Jenkins, sued defendants, Armour and Company, a corporation, and Winifred Logan for damages allegedly resulting from their negligence. Plaintiff's evidence was substantially as follows:

He had been employed in the "beef kill" department of defendant corporation's plant for some 5 years. He worked near the head of an "assembly line" along which the carcasses of cattle moved; it was his duty generally to skin the legs of the carcasses as they moved past him, using a sharp knife for that purpose.

On some dozen occasions, plaintiff accidentally cut himself with the knife he was using, and on several of those occasions required treatment at the company first aid station. He said that defendant Logan, the company nurse, was careless in the treatment of his wounds. It was shown that occasionally carcasses of cattle afflicted with tuberculosis would move past his station, and be handled by him, before the disease was discovered. In July of 1949, plaintiff accidentally fell and hurt his hip and back while at work. This fall apparently aggravated or accelerated a condition of plaintiff which caused increasing pain, and he quit his job sometime thereafter (his own testimony is in conflict as to the exact time). Because of the pain he was suffering, he went to several physicians, and on August 10, 1950 an operation was performed which revealed that he was suffering from tuberculosis of the spine.

On September 9, 1950, he signed and shortly thereafter filed with the State Industrial Commission an "Employee's First Notice of Injury and Claim for Compensation", based upon the fall he suffered in July of 1949. Nothing was said in the claim about tuberculosis, but at the hearing plaintiff testified substantially as summarized above, and a physician's report disclosing the existence of the disease was introduced in evidence by plaintiff (claimant). On January 4, 1951, after due hearing, the Commission en banc affirmed an order of the trial commissioner, which order contained a finding that plaintiff had suffered an accidental injury within the meaning of the Workmen's Compensation Statutes, but that his claim based thereon was barred by statute of limitations for failure to file the claim within one year from the date of the accident complained of. No appeal was taken from such order, and it has become final.

On February 21, 1951, plaintiff filed the action in the District Court of Oklahoma County upon which this appeal is predicated. At the conclusion of plaintiff's evidence, defendants' demurrer thereto was sustained and plaintiff has appealed.

There is no substantial dispute as to the facts in this case, and the only assignment of error argued by plaintiff is as follows: "Negligence may be established by circumstantial evidence in an occupational disease case the same as in a personal injury case and, in the trial of such an issue, where the proof is such as to take the case

out of the realm of conjecture and place it within the field of legitimate inferences from established facts, a prima facie case is made out and an order of a trial court, sustaining a demurrer to such evidence, is erroneous."

As is evident, this assignment as stated by plaintiff assumes that tuberculosis is an "occupational disease" insofar as plaintiff and his employment in the case at hand are concerned. Such is not the case, for reasons hereinafter set forth.

A careful examination of the record herein shows that it is plaintiff's theory that the tuberculosis germs entered his system through one of the cuts on his body referred to above, from the diseased blood of a freshly slaughtered beef which carried the germs of bovine tuberculosis.

■ In 67 C.J.S. at page 77 we find the following:

"An occupational disease is not an accident, *and is not a disease occasioned by accident or misadventure* or which arises from accidental causes. * * *

"It is a disease which is the natural incident of a particular occupation; one which is likely to result from that employment because of its inherent nature; *and it is the natural, usual, and ordinary result of that occupation.* * * * The disease must be brought about by exposure to certain harmful conditions which are *constantly present*, and to which all workmen in the occupation are *continually exposed*, and usually there must be long-continued exposure to the peculiar hazards of the particular employment, *since in occupational disease any one exposure to the deleterious substance is inconsequential in itself * * *.*" (Emphasis supplied.)

In Consolidated Gas Utilities Corp. v. Jeter, 205 Okl. 471, 238 P.2d 804, 806, this court said:

"An 'accident,' within the meaning of the Compensation Law, is distinguished from an occupational disease, in that the accident arises by some definite event the date of which can be fixed with certainty but which cannot be so fixed in the case of occupational disease."

See also 39 A.L.R., page 872, from which the following is taken:

"An external infection which has been distinctly traced to a definite point of contact, such as a scratch or abrasion, and to a definite time, being of an unusual nature and generally happening suddenly or unexpectedly, is generally held to constitute an accident, or an injury by accident, within the meaning of the act."

An expert witness, a veterinarian, testified for plaintiff that tuberculosis could be transmitted from cattle to human beings in the manner contended for by plaintiff; but he also testified that in his 13 years experience as a government meat inspector, 4 of which were spent in the plant of defendant corporation, he had never known of a case where tuberculosis was contracted in such way.

■ In the light of all the evidence in this case, we do not believe plaintiff established a cause of action. It was not shown that tuberculosis is the "natural, usual and ordinary result" of plaintiff's employment, or that the harmful conditions were "continually present", or that the workmen were "continually exposed" to them. On the contrary, according to plaintiff's own contentions, the disease in this case was "occasioned by accident or misadventure" (entrance of the germs through the accidental cuts on plaintiff's body) which arose "by some definite event the date of which can be fixed with certainty" (the dates of the accidental cuts).

■ Plaintiff argues that the case at hand should be classified as an occupational disease case, and that the doctrine of "assumption of skill" set out in 39 C.J. page 491, 56 C.J.S., Master and Servant, § 286 is applicable. In this connection we note that the doctrine of "assumption of skill" concerns knowledge, imputed to the master, of dangers which are ascertainable only by the use of scientific knowledge, and the master's duty to warn the servant with regard thereto. Under the facts herein, it

is evident that plaintiff can recover only if he suffers from an occupational disease, or if he has had an accidental injury for which defendants are liable. We have previously determined that he does not have an occupational disease, and the finding of the State Industrial Commission that recovery under the accidental injury theory is barred by the statute of limitations is res judicata as to that question, since no appeal was taken. Hughes Motor Co. v. Thomas, 149 Okl. 16, 299 P. 176. In either case the contention about the doctrine of "assumption of skill" is of no assistance and without merit.

Defendant's brief in support of the trial court's ruling contains argument to the general effect that no causal connection between defendant's alleged negligence and plaintiff's disability was shown. Such contention appears to have merit, but because of our holding above, it is unnecessary to consider it further.

The judgment of the trial court is affirmed.

HALLEY, C. J., and CORN, DAVISON and O'NEAL, JJ., concur.

WELCH and BLACKBIRD, JJ., dissent.